**NOT FOR PUBLICATION**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT for the DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)** | |
| In Re: GARY L. MASON,<br><br>      Debtor. | Case No. 17-18177 (MBK)<br><br>Chapter 7 |
| HARRY BADE, ALAN ABRASKIN, GLORIA ABRASKIN, ED GRAD, MARILYN GRAD, MATTHEW PHILLIPS and RIVER CAPITAL ASSOCIATES, LLC, individually and on behalf of NUMBA ONE, LLC,<br><br>      Plaintiffs,<br><br>   v.<br><br>GARY L. MASON, ESQ.,<br><br>      Defendant | Adv. Pro. No. 17-1463 (MBK) |

Alan L. Frank, Esq.
Robert E. Brookman, Esq.
Alan L. Frank Law Associates
135 Old York Road
Jenkintown, PA 19046
*Attorneys for the Plaintiffs*

Dipesh Patel, Esq.
Saul Ewing Arnstein & Lehr LLP
One Riverfront Plaza
Suite 1520
Newark, NJ 07102
*Attorney for the Defendant Gary L. Mason*

Michelle G. Novick, Esq.
Saul Ewing Arnstein & Lehr LLP
161 North Clark Street Suite 4200
Chicago, IL 60601
*Attorney for the Defendant Gary L. Mason*
(Admitted *Pro Hac Vice*)

**MEMORANDUM DECISION**

This matter comes before the Court upon the complaint (the "Complaint") filed by Harry

Bade, Alan Abraskin, Gloria Abraskin, Ed Grad, Marilyn Grad, Matthew Phillips, and River

Capital Associates, LLC, (the "Plaintiffs"), against defendant Gary L. Mason, Esq. (the

"Defendant" together with the Plaintiffs the "Parties").  The Complaint objects to the

dischargibility of a debt pursuant to § § 523(a)(2),(4) and (6) of the Bankruptcy Code, arising

from the alleged unauthorized release of investment funds from Defendant's client trust account.

The Court conducted a trial on this matter on June 12 and 13, 2019, during which the portions of

the Plaintiffs' complaint dealing with § § 523(a)(2) and (6) were dismissed.  The Court has

accepted and reviewed all submissions submitted by the Parties. For the reasons expressed

below, the Court grants judgment in favor of the Plaintiffs.  The Court issues the following

findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[1]

## I.      Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. § § 1334(a) and

157(a) and the Standing Order of the United States District Court dated July 10, 1984, as

amended September 18, 2012, referring all bankruptcy cases to the Bankruptcy Court.  This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).  Venue is proper in

this Court pursuant to 28 U.S.C. § § 1408 and 1409.

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such.
Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## II.    Background

When this unfortunate series of events commenced, Michael Attardi ("Attardi") was a screen writer and an aspirant film producer who had authored and attempted to finance several film scripts. Joseph Anselmo ("Anselmo") was a commercial finance broker who offered to assist Attardi with funding his film scripts and further offered to introduce him to the Defendant for legal representation. In or around June 2006, Anselmo introduced Attardi to the Defendant. Attardi retained the Defendant's law firm Klafter & Mason, LLC ("K&M"), to represent Attardi's businesses in exchange for a two percent equity interest in his various companies. Attardi began working on a film entitled, "Numba One," which was to be a live-action, mafia comedy starring Federico Castelluccio. Numba One, LLC ("Numba One") was a Florida limited liability company, formed for the purpose of producing the movie. Attardi and the Defendant were identified as the original managers of Numba One, and Attardi was the registered agent. Subsequently, Attardi learned that The Writers Guild of America would not permit him to be paid for his script as manager of the production company. Therefore, Attardi resigned as a manager of Numba One, and Andy VanRoon ("VanRoon") became a manager of Numba One. At all times thereafter, VanRoon and the Defendant acted as the two co-managers of Numba One.

In or around the later part of 2010, the Plaintiffs invested a total of $690,000 in Numba One with the understanding that the money was being placed in an escrow account until the total budget amount of $3,000,000 could be raised, further providing that the money would be

returned if the $3,000,000 could not be raised by September 2, 2011.[2]  The Plaintiffs' $690,000

was deposited under the name of Numba One into K&M's trust account. There can be no

question, as confirmed by the credible testimony of Bade, Scire and Phillips[3], as well as the

operative documents, that Plaintiffs invested their money with the understanding and assurances

that not a single dollar would be released until the entire $3,000,000 raise had been achieved. In

this regard, the Court notes the operative language appearing in Numba One's Operating

Agreement and Confidential Private Offering Memorandum. Pursuant to the Operating

Agreement, "[t]he monies shall be placed into a dedicated escrow bank account and will be

released to [Numba One] only when the total budget amount of Three Million Dollars

($3,000,000) has been achieved." Plaintiffs' Exhibit 25. Similarly, the Confidential Private

Offering Memorandum states that, "[a]ll funds received will be deposited into a dedicated bank

escrow account until the Total Minimum Offering being offered hereby is obtained." Plaintiffs'

Exhibit 32. These restrictions on the release of the invested funds confirmed the representations

included in certain promotional literature prepared by Numba One and shown to potential

investors. *See* Plaintiffs' Exhibits 26 and 35.

In or around January 2011, the Defendant, Attardi, and VanRoon were introduced to a

hedge fund known as Hamilton Guaranty Capital, L.L.C. ("Hamilton"), which was represented

by the Ferguson Law Group, P.C. (the "Ferguson Firm"). At the time of the introduction to

Hamilton, the Defendant, Attardi, and VanRoon were also introduced to Jason Castenir

---

[2] The November 10, 2010 Addendum to the Operating Agreement and Confidential Private Offering Memorandum drafted by the Defendant provided that the investors could request the return of their investments as of January 31, 2011, unless the $3,000,000 had been raised.

[3] Messrs. Bade, Scire and Phillips were investors in Numba One and are co-plaintiffs in this case.

("Castenir"), the Vice-President of Atlantic Gulf Oil Holdings, Inc. ("Atlantic Gulf") located in

Nevada. During that time, Atlantic Gulf and Hamilton were negotiating the terms of their own

Financial Services Agreement (the "FSA"), pursuant to which Hamilton was going to issue

Atlantic Gulf a $50 million Standby Letter of Credit (the "Letter of Credit"). The details of the

transaction are dubious and so the Court will relay them as put forward in the Defendant's

pleadings. Castenir told the Defendant that Atlantic Gulf's intent, when it began negotiating with

Hamilton regarding the Letter of Credit, was to monetize the Letter of Credit using its oil

refineries as collateral and then use the proceeds to purchase additional oil-related assets. To

finalize this transaction with Atlantic Gulf, Hamilton required a deposit in order to invest the

time and assets necessary to put together the backing for the Letter of Credit, since this was said

to be a complex, structured financing transaction. The transaction was to happen as follows: As

soon as Hamilton had gathered the assets from its investors necessary to fund the $50 million

Letter of Credit, it was required to issue a pre-advice advising Atlantic Gulf that it was ready to

issue the Letter of Credit. To obtain the Letter of Credit from Hamilton, Atlantic Gulf would pay

Hamilton a total of $7.34 million in fees ― which would include the Plaintiffs' $690,000 ―

after Citibank Korea received the Letter of Credit issued by a lending institution identified in the

FSA. Pursuant to the FSA, the $690,000 would be returned to Numba One if Hamilton failed to

issue a pre-advice. However, the FSA contained another provision which triggered the transfer of

the $690,000 to Hamilton in the event of Atlantic Gulf's failure to timely issue the fee guarantee

in favor of Hamilton.

Pursuant to a January 21, 2011 escrow agreement, the $690,000 was wired by the

Defendant to the Ferguson Firm's trust account. The funds were subject to the escrow agreement

with the Ferguson Firm and ostensibly under Numba One's control until February 2, 2011. By

email dated January 27, 2011, Phillips, asked the Defendant to return the funds for himself and

other plaintiffs for which he was acting as proxy. Prior to this time, none of the Plaintiffs knew

about the transaction. Rather than return the funds, on January 31, 2011, Phillips, Scire, the

Defendant, Attardi and VanRoon had a conference call during which the Defendant, Attardi, and

VanRoon explained the structure of the transaction to Phillips and Scire. During that call, the

Defendant claims to have emailed the FSA to Phillips and Scire for review. The Plaintiffs deny

receiving the FSA until months later. On February 2, 2011, Ferguson Law required Numba One

and Atlantic Gulf to acknowledge affirmatively that the funds were being pledged for the

transaction, and that the FSA exclusively controlled the transaction. The Defendant affirmatively

acknowledged the transaction via email at 5:09 pm on February 2nd, and the funds thus became

subject to the FSA. This is confirmed not only by the Defendant's testimony, but by an email

from Faisal Qureshi, the CEO of Hamilton.

The next communication the Defendant had with either Phillips or Scire occurred on

February 7, 2011, when Phillips called to tell the Defendant that he was becoming concerned

about the risks associated with the transaction. Phillips told the Defendant that he would be more

comfortable if the funds were held in the Ferguson Firm's trust account until Hamilton issued the

Letter of Credit. The Defendant told Phillips that he did not think it was possible to restructure

the transaction at that point because of the February 2nd acknowledgement that the FSA

6

controlled the transaction. The Defendant further advised Phillips that he could find a local law

firm in Texas to file an order to show cause in an attempt to stop the transaction while trying to

work through its details. Phillips then told the Defendant not to proceed with legal action but

instead wait and see how things played out after the Defendant spoke with the Ferguson Firm.

On February 7, 2011, the Defendant emailed the Ferguson Firm with Phillips' concerns and

suggested alternative ways to restructure the transaction. The Ferguson Firm's only response was

that it was merely an escrow agent and could not speak to the structure of the transaction. Kyle

Ferguson, Esq. of the Ferguson Firm forwarded the Defendant's email to Hamilton. The

Defendant also attempted to communicate with Hamilton directly but to no avail, and on

February 9, 2011, Hamilton issued the pre-advice in accordance with the terms of the FSA.

Atlantic Gulf never issued the Fee Guarantee, thus defaulting under the FSA. As a result, and in

accordance with the terms of the FSA, the Ferguson Firm, as escrow agent, delivered the

$690,000 to Hamilton. K&M demanded return of the $690,000, but Hamilton and Atlantic Gulf

refused.

On or about August 14, 2013, the Plaintiffs filed a complaint against the Defendant,

K&M, and Hamilton in the Monmouth County Superior Court, (the "State Court Action"). In the

State Court Action the Plaintiffs alleged, *inter alia*, that the Defendant and K&M were negligent

with regard to the handling of Plaintiffs' collective $690,000 investment in Numba One. On or

about October 31, 2016, the State Court entered a consent judgment against the Defendant, in the

amount of $890,000. On April 21, 2017, the Defendant filed for bankruptcy under chapter 7 of

the Bankruptcy Code. On July 21, 2017, the Plaintiffs filed the instant adversary proceeding. A

trial was conducted in this matter on June 12 and 13, 2019. At trial, the Court heard credible

testimony on Plaintiffs' case from Bade, Phillips and Scire. For the defense, the Court heard the

testimony of Defendant, Gary Mason. The testimony of Marcia Mason, Defendant's spouse, does

not factor into the Court's ruling. For the reasons that follow, the Court finds that the Defendant

committed a defalcation while acting in a fiduciary capacity. Therefore, the debt arising from the

unauthorized release of the $690,000 entrusted to the Defendant is not dischargeable pursuant to

§ 523(a)(4).

### III.    Summary of the Arguments

As stated previously, the initial complaint raised non-dischargeability claims under

§ § 523(a)(2),(4) and (6) of the Bankruptcy Code. At the conclusion of the trial, the Court

dismissed the counts under § § 523(a)(2) and (6), leaving only the portion of the complaint

brought under § 523(a)(4). The Court now must consider whether the Defendant was a fiduciary

for the purposes of § 523(a)(4), and, if so, whether he breached his fiduciary duty.

The Plaintiffs argue that the Defendant's debt is non-dischargeable pursuant to

§ 523(a)(4) because the Defendant committed an intentional wrong while acting in a fiduciary

capacity when he utilized funds entrusted to him without authorization, in contravention of the

parties' agreement and without conducting proper due diligence.

The Defendant's defenses are threefold. First, the Defendant contends that he did not owe

a fiduciary duty to the Plaintiffs because no express or technical (as in an attorney client

relationship) trust ever existed. Secondly, the Defendant argues that he had authority under the

operating agreement and the private offering memorandum to act on behalf of Numba One.

Alternatively, the Defendant maintains that the parties implicitly consented to the transaction by

not objecting to it before the funds became irretrievable.

**IV.      Standard for Non-Dischargeabilty Based on Defalcation**

Section 523(a)(4) of the Bankruptcy Code provides that:

(a)     A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this
          title does not discharge an individual debtor from any debt—
          . . .
          (4)      for fraud or defalcation while acting in a fiduciary capacity,
                   embezzlement, or larceny.

Defalcation occurs when a fiduciary misappropriates or fails to account for money or property

that is held for another." *In re Baillie*, 368 B.R. 458, 469 (Bankr. W.D. Pa. 2007), *aff'd in part*

*sub nom. Pennsylvania Lawyer's Fund for Client Sec. v. Baillie*, No. 07-1050, 2007 WL 2875501

(W.D. Pa. Oct. 3, 2007). Nondischargeability based on the fiduciary relationship is usually

reserved for situations in which an attorney-debtor has been entrusted with funds or property. *See*

*ColeMichael Investments, L.L.C. v. Burke*, 436 B.R. 53 (N.D. Ill. 2010).

"To prove that a debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as a result of

defalcation, a creditor must show that: (1) a pre-existing fiduciary relationship existed between

the debtor and the creditor; (2) the debtor acted in violation of that relationship; and (3) the

creditor suffered an economic loss as a consequence." *In re Grigg*, No. 12-7008, 2013 WL

5771870, at *3 (Bankr. W.D. Pa. Oct. 23, 2013).

The first element of the defalcation test requires a fiduciary relationship between debtor

and creditor. The scope of the term fiduciary capacity under § 523(a)(4) is a question of federal

bankruptcy law, but state law must be examined to determine whether a fiduciary obligation

exists. *Id*. Numba One was a Florida limited liability corporation. Therefore, Florida law will apply in this case.

The second element of the defalcation test requires an intentional wrong. "Where actual knowledge of wrongdoing is lacking, conduct is considered as equivalent if, as set forth in the Model Penal Code, the fiduciary 'consciously disregards,' or is willfully blind to, 'a substantial and unjustifiable risk' that his conduct will violate a fiduciary duty." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 267–68 (2013).

## V.    Discussion

For the reasons set forth in detail below, the Court finds that all the elements of defalcation have been met. The Defendant had a fiduciary responsibility to the Plaintiffs as a managing member of Numba One and also in his capacity as escrow agent. The Defendant breached this duty when he released the funds from escrow without a complete understanding of the transaction and without the Plaintiffs' informed consent. The Defendant's breach resulted in the loss of the Plaintiffs' investment.

The Defendant was a managing member of Numba One. According to Fla. Stat. § 608.4225, managers of Florida limited liability companies owe a fiduciary duty of care to their members, which encompasses the safeguarding of member property. *See Fla. Estate Developers, LLC v. Ben Tobin Cos.*, 964 So. 2d 238 (Fla. Dist. Ct. App. 2007). *See also, e.g. Dynasty Bldg. Corp. v. Akerman*, 376 N.J. Super. 280, 287 (App. Div. 2005); *In re Frost*, 171 N.J. 308, 322-324 (2002) (noting that an attorney possesses a fiduciary duty to those whose funds he holds in escrow regardless of whether they are a client or not); *Lan Dai Nguyen v. Sanghwan Hahn*, 2011

N.J. Super. Unpub. 147, at *6 (App. Div. Jan. 21, 2011) (upholding trial court's determination

that attorney owed a fiduciary duty to a non-client as a consequence of holding that individual's

funds in escrow). The Plaintiffs were all members and investors in Numba One, as such, the

Defendant had a responsibility to safeguard their investment. Secondly, the Defendant owed a

fiduciary duty to the Plaintiffs as escrow agent. The Defendant acknowledged his fiduciary duty

of care based on his custody of Plaintiffs' funds in a December 2, 2010, email addressed to

Attardi and Van Roon. "I do owe them a duty of care since I am holding their money in my trust

account." Plaintiffs' Exhibit 36. Thus, by the Defendant's own admission he was a fiduciary

within the meaning of § 523(a)(4).

Likewise, the Court finds that the second element of defalcation is present in this case.

The Defendant breached his fiduciary duty by surrendering Plaintiff funds in connection with a

dubious investment transaction — without authorization, and without any meaningful

examination of the transaction or the parties associated therewith. The evidence on record, which

includes legal documents and correspondence drafted by the Defendant, is unequivocal. In an

email dated November 29, 2010, the Defendant wrote: "[a]ll I care about is that no one except us

has access to that $690,000 until the remaining $2.4M is available for the movie." Plaintiffs'

Exhibit 47. The email is a clear indication of the Parties' understanding that investment funds

were not to be released under any circumstances until the total budget amount was raised.

Notwithstanding the agreement, the money was released to Ferguson on January 21, 2011,

without notice to the Plaintiffs. It was only after Mr. Phillips' January 27th reimbursement

request that the Defendant informed the Plaintiffs of the transaction. Moreover, even accepting

11

the Plaintiffs' representation that the FSA was circulated on January 31, 2011, the Plaintiffs were

left with a mere 48 hours to review an incredibly complex and labrynthine transaction before the

loss of funds became irreversible.

It is also not lost on the Court that Defendant and the other managers of Numba One,

recognizing the looming deadline of January 31, 2011, by which the investors would be entitled

to a return of their money, rushed through with this last-gasp effort to raise the funds for the film.

While there is no question that management of Numba One was the responsibility of Messrs.

Mason and VanRoon, as managers, they were not free to ignore the written and oral

commitments to refrain from prematurely releasing the investor funds.

As stated previously, the Defendant argues that he did not commit defalcation by

agreeing to the transaction and relies on Plaintiffs' failure to oppose it in support of his position.

However, given the circumstances in this case, the Court does not construe the Plaintiffs' silence

as an affirmative acceptance of the transaction, and instead views it as a consequence of the

denial of an opportunity to meaningfully object. To the extent the Plaintiffs tacitly agreed to the

transaction by not overtly opposing it, the Defendant's failure to disclose the deal and its details

created time constraints which pressured the Plaintiffs into approving the investment in the dark.

This "implicit consent" does not mitigate the Defendant's breach because the Plaintiffs were not

adequately informed.

Indeed, the Defendant's emails and testimony suggest that he did not fully understand the

deal himself.  One such email sent to Castenir dated January 31, 2011, reads as follows,

I had [sic] to keep bothering you, but a couple of more questions:

12

1.    Does our $690,000 make up part of the "deferred fee" so our $690,000 gets paid to Hamilton?
2.    In light of the language of the FSA, how are you going to make our receipt of the $4.2M and Hamilton's receipt of the $690,000 simultaneous?

Defendant's Exhibit 37. The Court notes that this correspondence came ten days after the Defendant had already transferred the funds to the Ferguson Firm's trust account and only two days before the deal was to become final. Thus, it appears the Plaintiff remained uncertain regarding the logistics of the transaction even after he had committed to it and invested Plaintiffs' money. The Defendant had also received an email on the 31st from VanRoon, highlighting certain risks associated with the transaction:

> I'm pretty sure you got clarification on this from [Castenir] — the line in blue below states that [Atlantic Gulf's] failure to provide Fee Guarantee would result in the Advance Fee [the $690,000] immediately being earned by and transferred to [Hamilton] — what assurances do we have that [Atlantic Gulf] will provide that Fee Guarantee, beyond [Castenir] indicating that he intends to do so. This is mainly as issue because the new Depositor Acknowledgment recognizes the FSA as the controlling doc.

Defendant's Exhibit 38. The Defendant did not return VanRoon's email until February 2, 2011, the day the deal became irreversible. This further evidences that the Defendant moved the money, either without conveying salient information to the Parties, or without a complete understanding of the transaction. This lack of understanding underscores an absence of diligence in the investigation of the transaction and the parties involved.

In late March of 2011, the Defendant sent another email to various investors which further indicates a deficiency in care and conscientiousness:

> We conducted as much due diligence as we possibly could on [Atlantic Gulf]. These days, in the world of internet and scam/hoax websites, NOT finding anything

is just as good as finding something positive. Both [Atlantic Gulf] and [Castenir] checked out. You will not find anything negative on either [Castenir] or [Atlantic Gulf] anywhere. In addition, we relied considerably on Hamilton and their underwriter's own due diligence.

Plaintiffs' Exhibit 40. The email does not convince the Court that any reasonable

investigation was actually performed and appears more like an attempt skirt the issue.

The phrase "as much due diligence as we possibly could" is troublingly vague and does

nothing to inform the reader of any specific acts that were undertaken in order to vet

Castenir or Atlantic Gulf. Moreover, relying on the due diligence of others is not

equivalent with conducting due diligence.  In fact, it is the exact opposite. The Defendant

threw the Plaintiffs' investment to the wind in conscious disregard of the risks associated

with the transaction and without meaningful vetting of the parties involved. This conduct

is made even more egregious by the explicit restrictions on the release of the invested

funds known and reaffirmed by the Defendant. The FSA was executed as a direct result

of the Defendant's inattention and the Plaintiffs' money was lost as a result.

## VI.    Conclusion

For the aforementioned reasons, the debt arising from the unauthorized release of the

$690,000 entrusted to the Defendant is not dischargeable pursuant to § 523(a)(4). Plaintiffs'

counsel is directed to submit a form of judgment.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: August 14, 2019